# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| BARBARA WAJVODA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:11-CV-393 |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment, filed by the defendant, Menard, Inc., on January 5, 2015 (DE #54). For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

On or about October 12, 2011, the plaintiff, Barbara Wajvoda ("Plaintiff"), filed her complaint in the Porter Superior Court, sitting in Valparaiso, Indiana, under cause number 64D01-1110-CT-9854. (DE #1.) The complaint alleges negligence on the part of the defendant, Menard, Inc. ("Defendant"), arising from an alleged slip and fall incident at a Menard store in Valparaiso, Indiana. (*Id.*) On October 27, 2011, Defendant filed a petition for removal on the basis of diversity jurisdiction. (DE #2.) On April 3, 2012, Defendant filed a third party complaint against

Mistic, Inc., alleging that a snow removal agreement existed between Defendant and Mistic, Inc. that directly involved the Valparaiso, Indiana Menard store location on the date of the incident in question. (DE #13.) On October 16, 2013, Mistic, Inc. filed a motion for summary judgment in which it sought dismissal from the suit pursuant to an arbitration agreement between itself and Defendant. (DE #36.) In response, Defendant filed a motion to stay the crossclaim pending arbitration. (DE #45.) On February 3, 2014, Magistrate Judge Andrew P. Rodovich denied Defendant's motion to stay and recommend that its third party complaint be dismissed without prejudice. (DE #49.) On June 5, 2014, this Court approved and adopted Magistrate Rodovich's recommendation, denied Mistic Inc.'s motion for summary judgment, and dismissed Defendant's third-party complaint against Mistic, Inc. without prejudice. (DE #50.)

Subsequently, on January 5, 2015, Defendant filed the instant motion for summary judgment against Plaintiff, arguing that there are no genuine disputes remaining as to any material facts in this case. (DE #53.) Specifically, Defendant argues that summary judgment is warranted because it is undisputed that the subject area of the fall was "clear and free of snow and ice, after the plaintiff's alleged fall" and because Plaintiff "cannot identify on what she claims to have flipped." (DE #54, p. 10.) In support of this proposition, Defendant cites to Plaintiff's

deposition testimony as well as to a recorded statement of a phone call with Plaintiff made the day after the alleged incident. (See DE #54, exhibits B & D.)

In response, Plaintiff argues that genuine disputes exist in the record that preclude summary judgment. (DE #56.) Specifically, she argues that Plaintiff's deposition testimony creates a dispute as to whether Plaintiff can identify what caused her to fall, and she also argues that disputes exist as to Defendant's knowledge of the conditions of the sidewalk. (*Id.*) In support of her claims, Plaintiff attaches, among other documents, affidavits of herself and of her husband, John Wajvoda. (See DE #56-1, exhibits 2 & 5.)

Defendant filed its reply on February 23, 2015. (DE #60.) Additional evidence was designated by Defendant to refute Plaintiff's arguments.[1] (DE #62; see also DE #63.) The motion is ripe for adjudication.

DISCUSSION

Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a

---

[1]  In addition, the parties each filed a motion to strike. (DE #57 & DE #59.) The Court denied both motions on September 30, 2015. (DE #66.)

reasonable jury could return a verdict for the nonmoving party."
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial,

summary judgment is proper.  See *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

On the morning of December 6, 2010, Plaintiff traveled to the Menard store located in Valparaiso, Indiana.  (DE #54, p. 28; DE #56-1, p. 14.)  The weather was cold and windy, and it was snowing when she arrived.  (DE #54, p. 30.)  Plaintiff testified that "the snow was actually very light, but it was that very light frosty snow that was coming, and it was so windy that the snow was actually blowing like almost sideways."  (*Id*. at 31.) According to Plaintiff, the parking lot was covered with between two and four inches of snow, but the sidewalk near the canopied entryway to the store had been cleared of snow and only had a dusting on it.  (*Id*. at 31-32; see also DE #56-1, p. 7.)  As she was attempting to enter the store, Plaintiff fell onto the sidewalk, breaking her arm and injuring her hip.  (DE #56-1, pp. 7-9.)

The day after Plaintiff fell, she gave a voluntary recorded statement to Denise Staples, an employee of Defendant's insurance carrier, that provided, in part:

> BW:[2]  I was . . . I got out of my car and I
>         was walking up to the front door and I
>         got almost to the front door to the

---
[2]  Barbara Wajvoda.

> side, you know, the little sidewalk area
> that they have right there in the front
> and I and I slipped and fell down and
> landed on my elbow.
>
> DS:[3] Oh, is it your right or left elbow?
>
> BW: Left.
>
> DS: Do you know what caused you to slip?
>
> BW: I do not. The, the side . . . it was
> snowing and blowing at the time. The
> sidewalks, ah, were not in bad shape.
> They looked like they had been cleaned,
> although there was some snow on them but
> it was —
>
> DS: Right.
>
> BW: . . . it was still snowing, you know, so
> ah, so maybe there was ice underneath or
> something. I don't know. I just, you
> know, you're up and then you're down.

(DE #54, pp. 47-49.) When asked about the cause of the fall during her deposition, Plaintiff testified as follows:

> Q: So you're walking up and then you step
> on something or – how do you fall down?
> Tell me about that a little bit. Did
> your feet slip from under you or –
>
> A: I slipped on the ice. I mean I just – I
> walked onto the sidewalk, I'm going to
> call it the sidewalk part, and I was
> only on there – like I said, because
> there was a pallet in from of me, so the
> – where I was entering the sidewalk was
> limited, the area was limited because of
> the pallet, and that's where I stepped
> on the sidewalk, and I only took like
> two steps and slipped on – hit the ice
> and just went down flat (indicating).

(*Id.* at 36.) When asked whether she saw ice on the sidewalk, Plaintiff replied that she had not. (DE #62-2, p. 12.) However, she did state that she felt the ice after she fell. (*Id.*)

---

[3] Denise Staples.

Later, in that same deposition, the following exchange took place:

> Q: Where you fell you were actually on the sidewalk, is that correct?
> A: Oh, yes, absolutely, yes.
> Q: And where you put your foot down and you began to slip and fall, was there any snow underneath your foot or was there just ice?
> A: I do not know.
> Q: Do you remember seeing snow where you stepped at, where you fell?
> A: I do not remember that.
> Q: Okay. You don't remember seeing snow or was there –
> A: I don't remember seeing snow right where my foot happened to step.
> Q: Okay. And I remember you said you didn't see any ice?
> A: I did not see ice.
> Q: Okay. And afterwards you came to find out it was sort of a clear ice?
> A: Yes, that's correct.

(*Id*. at 35.)  In her affidavit, Plaintiff states that she "slipped and fell on the ice covering the sidewalk next to the entranceway of the Menard's store." (DE #56-1, p. 14.) She also states that it was cold and snowing on the morning of her fall, and, while the sidewalk had been cleared of snow "sometime recently," it had not been cleared of ice. (*Id*.)

As a general practice, Defendant asserts that its employees clean off and salt the entranceway to the store and sidewalks leading up to it "from time to time." (DE #54, pp. 38-39.) However, Milos Zubic ("Zubic"), an employee of Defendant, testified that there was no record kept of precisely when or by

whom the sidewalk was salted on December 6, 2010. (*Id*. at 40; DE #56-1, p 50.)   When asked specifically about the investigation into Plaintiff's December 6, 2010, fall, Zubic testified as follows:

> A:   I recall that our office manager – our assistant office manager at the time was Lori Hansen, and she informed me by – I don't know how she informed me.   She told me basically that somebody had claimed to have fallen out in front, and I said did you take a report type of stuff where you take a report, she said, yes.   I said let's go look and see what photos you have.   We went out and she took like one or two photos, and we went outside and looked at the place where the lady claimed to have fallen, and what I saw is a clear sidewalk with salt on it.   I said you'd better take some more photos, so she went back or either I took more photos, I can't remember who took more photos, but we took a few more photos at that time.

> . . .

> Q:   Now, sir, did you have somebody take the pictures that have been marked as Exhibit No. 1, Group Exhibit No. 1 after you had somebody from Menard's go out and clean them off and salt the area?
> A:   I think there's a double negative in there, but we did not salt after the accident.   It should have been done prior to the accident.
> Q:   It's your testimony that it was done prior to the accident?
> A:   Yes.   Yes.   I would not have had them take pictures of an altered site.

(DE #54, pp. 41-42.)

During her deposition, when asked whether she had seen any salt or sand on the sidewalk prior to her fall, Plaintiff replied that she had not. (DE #56-1, p. 7.) She indicates the same in her affidavit, noting that "[t]he sidewalk where I fell was cleared of snow sometime recently before I fell. However there was no salt or sand on the sidewalk where I fell. The walk was not cleared of ice." (*Id.* at 14.) Plaintiff's affidavit further provides that the pictures referenced above "do not accurately represent the sidewalk as it was at the time [of the fall]." (*Id.* at 15.) Finally, Plaintiff testified that, at the time of her fall, she did not see any of Defendant's employees removing snow or laying down salt in either the parking lot or on the sidewalk. (*Id.* at 11-12.)

Analysis

Under Indiana law,[4] a plaintiff asserting a claim of negligence must prove that a duty was owed by the defendant to the plaintiff, that the duty was breached, and that the breach proximately caused plaintiff to suffer an injury. *Wabash Cnty. Young Men's Christian Ass'n, Inc. v. Thompson*, 975 N.E.2d 362, 365 (Ind. Ct. App. 2012) (citing *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004)). "[N]egligence cannot be inferred from the

_____

[4] The parties do not dispute that Indiana substantive law applies to this diversity suit.

mere fact of an accident" nor may it "be established through inferential speculation alone." *Hale v. Cmty. Hosp. Of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991); see also *Miller v. Monsanto Co.*, 626 N.E.2d 538, 541 (Ind. Ct. App. 1993) ("specific factual evidence, or reasonable inferences that might be drawn therefrom" must be presented to the court). Because negligence cases are highly fact sensitive, it is rare that summary judgment is appropriate. *Thompson*, 975 N.E.2d at 365 (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). "Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." *Id.* (citing *Rhodes*, 805 N.E.2d at 385).

While an invitee[5] is on the premises, a landowner owes that person a "duty to exercise reasonable care for the invitee's protection." *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014). That duty is breached if the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

---

[5] The parties do not dispute that Plaintiff was a business invitee of Defendant and was thus owed a duty of reasonable care.

*Id.* at 315-16 (citing *Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 749 (Ind. Ct. App. 2011) (quoting Restatement (Second) of Torts § 343 (1965))).  In the context of snow and ice removal, the rule is flexible; immediate removal is not required so long as reasonable care is exercised in the maintenance of the premises.  *Id.* at 316 (citing *Hammond v. Allegretti*, 311 N.E.2d 821, 826 (Ind. 1974)); see also *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 817 (7th Cir. 2006) (in Indiana, there is no "duty of continuous monitoring and clearing during a winter storm").  In *Henderson*, the court concluded that while a storm need not be over before the duty attaches, the "landowner is entitled to actual or constructive notice of the presence of snow or ice and a reasonable opportunity to remove it."  *Henderson*, 17 N.E.3d at 319.

*Causation*

In its motion for summary judgment, Defendant begins by arguing that Plaintiff's claim of negligence fails because she has not identified the substance upon which she allegedly slipped.  Defendant asserts that it is undisputed that the sidewalk in front of the store was free and clear of snow and ice, and that Plaintiff has provided no affirmative evidence that any defective condition existed.  Plaintiff disagrees and states that she clearly identified ice as the cause of her fall in both

her deposition and affidavit. She also argues that there is a genuine dispute as to whether the sidewalk was cleared of ice and salted prior to her fall.

Defendant, in large part, relies on *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456 (Ind. Ct. App. 2000) to support its argument. In *Hayden*, the court concluded that the plaintiff, a patron who slipped and fell while exiting a restaurant, had failed to present any evidence to explain the proximate cause of his injuries, which doomed his negligence claim. *Id*. at 457-59. Specifically, the court focused on the following deposition testimony of the plaintiff, noting that the plaintiff's uncertainty evidenced an improper reliance on "speculation and conjecture" as to the determination of causation:

> Q: Do you have any other facts that support your belief that this was what you call black ice?
> A: None other than the fact that my feet went out from underneath me and I went up in the air and fell down.
> Q: Do you have any idea what – strike that. Do you have have [sic] any idea what your feet slipped in that caused you to fall?
> A: Are you calling for speculation on my part?
> Q: I'm just asking if you know. And I'm not asking you to speculate.
> A: I don't know for sure.

*Id*. at 458-59. Defendant asserts that Plaintiff's testimony in this case is analogous to that described in *Hayden* and takes particular issue with Plaintiff's admission that she did not see

ice on the sidewalk.  However, while it is true that Plaintiff testified that she did not *see* the ice, she clearly testified that she *felt* the ice after she fell.  And, when asked directly about the fall itself, she stated, "I slipped on the ice" and "slipped on – hit the ice and just went down flat."  Unlike the plaintiff in *Hayden*, here there was no equivocation in Plaintiff's deposition testimony regarding the cause of her fall. While she admitted that she did not remember seeing snow "right where my foot happened to step" or any ice, the fact that she recalled feeling the ice beneath her after she fell, coupled with her testimony that a light dusting of snow covered the sidewalk beneath the canopied entryway, that she had not seen any salt or sand on the sidewalk prior to her fall, and that she "slipped on the ice," distinguishes this case from *Hayden*.  Indeed, it does not necessarily follow, as Defendant would have this Court believe, that a person must see something in order to know what it is.[6]  See e.g. *Blackburn v. Menard, Inc.*, No. 2:10-CV-87, 2013 WL 6178245, *3-4 (N. D. Ind. November 25, 2013).  Plaintiff's deposition testimony, in and of itself, creates a genuine dispute as to the issue of causation.

    In addition, Plaintiff's affidavit provides that: (1) it was cold and snowing on the morning at issue; (2) she slipped and

---

[6]  For example, one's eyes may be closed when handed a banana, yet it is reasonable to infer that the identity of the object could be determined by touch alone, without undue speculation or conjecture.

fell on the ice covering the sidewalk next the entranceway; (3) the sidewalk had recently been cleared of snow but not ice; and (4) there was no salt or sand on the sidewalk. Defendant argues that Plaintiff's affidavit impermissibly contradicts her prior sworn deposition testimony. The Court disagrees. None of these statements are inconsistent with the deposition testimony described above. While the statements in the affidavit may expand upon Plaintiff's prior sworn testimony, they are not directly contradictory. Again, it is entirely conceivable that Plaintiff could have identified the substance she slipped on as ice without actually having seen it. See *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (a party may attempt to clarify or augment – but not contradict – prior deposition testimony through affidavits); *Lovejoy Electronics, Inc. v. O'Berto*, 873 F.2d 1001, 1005-06 (7th Cir. 1989) (while a later submitted affidavit that contradicts plain admissions in prior deposition or otherwise sworn testimony will not create a genuine dispute, it can be used to clarify previous ambiguous statements).

Finally to the extent that Defendant asks this Court to conclude that Plaintiff's recorded statement to its insurance carrier made the day after the accident precludes any genuine dispute as to the issue of causation, the Court declines to make such a determination. Plaintiff's recorded statement was not

-14-

made under oath. Again, while it is clear that an affidavit containing conclusory allegations that contradict prior deposition or other sworn testimony cannot be used to defeat a summary judgment motion in the Seventh Circuit, Defendant has not pointed to, nor has the Court found, any case that expands that rule to include prior unsworn testimony. See *Jean v. Dugan*, 814 F. Supp. 1401, 1404 (N.D. Ind. 1993) aff'd, 20 F.3d 255 (7th Cir. 1994); see also *Davenport v. Potter*, No. 06 C 4614, 2008 WL 4126603, *2-3 (N.D. Ill. Aug. 15, 2008) ("When a subsequent sworn statement contradicts a prior unsworn admission, a genuine issue of fact exists.") (citing *Shockley v. City of Newport News*, 997 F.2d 18, 23 (4th Cir. 1993)). Should Defendant choose to use the recorded statement against Plaintiff at trial (assuming *arguendo* that the statement complies with all applicable Federal Rules of Evidence), the question of any potential inconsistencies becomes one of credibility for the jury to decide.[7]

---

[7]  Defendant also urges the Court to discard Plaintiffs deposition testimony and affidavit statements as self-serving assertions without factual support in the record. The Court declines to do so, as the evidence outlined in the facts section of this order is within Plaintiff's personal knowledge and not otherwise improper. See *Davenport*, No. 06 C 4614, 2008 WL 4126603 at *2-3 ("The mere fact that evidence may be characterized as self-serving does not, however, preclude its consideration. So-called self-serving statements may support or defeat summary judgment provided they are within the declarant's personal knowledge.") (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)). See also Payne v. Pauley, 337 F.3d 767, 771 (7th Cir. 2003) (warning against "the trap of weighing conflicting evidence during a summary judgment proceeding").

In sum, based on the evidence presented by both parties, there is a genuine dispute as to the issue of causation, and summary judgment must be denied.

*Knowledge*

Defendant next argues that Plaintiff has failed to submit any evidence that Defendant had actual or constructive knowledge of the allegedly defective condition of the sidewalk, and, therefore, cannot be held liable for any injuries sustained because of it. Plaintiff responds by pointing to her deposition and affidavit testimony that, she says, creates a genuine dispute as to Defendant's actual knowledge of the ice.

Both parties cite to the *Henderson* case in their briefs. In *Henderson*, the defendant (the "hospital") was notified by its security staff that slick conditions had begun to develop in its parking lots at approximately 5:55 a.m. *Henderson*, 17 N.E.3d at 313. Less than an hour later, the hospital's maintenance crew had begun to spread salt and calcium chloride on the parking lots and sidewalks. *Id*. at 314. At approximately 7:20 a.m., the plaintiff arrived for work, and she slipped on the ice as she was exiting her car. *Id*. Upon later review, the hospital's security personnel determined that the parking lots had been insufficiently salted. *Id*. Plaintiff sued alleging that the hospital knew of the hazardous condition and was negligent

-16-

because the parking lot was not properly cleared of ice. *Id*. The hospital moved for summary judgment arguing that it did not breach any duty of care owed to plaintiff because it did not have a reasonable amount of time to remove the ice prior to the plaintiff's fall. *Id*. The appellate court determined that the lower court had erred when it relied on the Connecticut Rule as the appropriate standard to determine whether the hospital breached its duty to the plaintiff,[8] and it reversed the trial court's grant of summary judgment. *Id*. at 317, 320. The court held that, because the hospital had actual knowledge of the hazard, it was up to the trier of fact to determine whether the snow and ice removal actions taken by the hospital were reasonable under the circumstances. *Id*. at 319-20. In so doing, the court distinguished the case from both *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006) and *Orth v. Smedley*, 378 N.E.2d 20 (Ind. Ct. App. 1978), noting that "[b]oth of those cases addressed [instances] where a landlord/landowner did not have actual or constructive knowledge of the particular hazard at issue because of either a sudden change in weather that occurred overnight or ice suddenly formed in a short period of time with very little warning." *Henderson*, 17 N.E.3d at 319.

---

[8] The appellate court noted that the Connecticut Rule, "particularly the language requiring the storm or weather condition to cease before there is a duty to remove the accumulated snow or ice, has not been adopted in Indiana jurisprudence." *Henderson*, 17 N.E.3d at 317.

The Court agrees with Plaintiff that *Henderson* is factually similar to the case at bar. Here, it is true that the question of Defendant's knowledge of the hazardous condition is not undisputed as it was in *Henderson*; however, viewing the evidence presented in the light most favorable to Plaintiff, it is reasonable to infer that Defendant had actual knowledge of the ice on the sidewalk prior to Plaintiff's fall. While Defendant repeatedly insists (both in its motion and in its reply brief) that Plaintiff testified that the sidewalk had been recently cleared of both snow and ice, upon careful review, the Court finds that this is a mischaracterization of Plaintiff's testimony. Plaintiff testified that the canopied entryway had recently been cleared of *snow*, but she made no such representations as to any ice.[9] In fact, Plaintiff testified that there was a light dusting of snow covering the sidewalk and that she slipped on the ice (which she felt beneath her after she fell). Importantly, Plaintiff also testified that she did not see any salt or sand in the vicinity. Plaintiff's affidavit reiterates those assertions, stating that the walk was recently cleared of snow but not of ice and that there was no salt or sand on the sidewalk at the time of her fall. Additionally, Plaintiff's affidavit provides that the photographs relied upon by Defendant to show that the sidewalk was salted do not

---

[9] Counsel's queries were directly related to the type and quantity of snow, and Plaintiff answered in kind. (See DE #54, pp. 30-32, 34, 36.)

accurately represent the scene at the time of her fall. Based on these facts, it is reasonable to infer that Defendant cleared the sidewalk of snow, noticed the ice underneath it, but did not apply sand or salt to the ice. See *Byrne v. U.S.*, No. 00 C 3007, 2002 WL 433064, *4-5 (N.D. Ill. Mar. 20, 2002) (facts of prior ineffective clean-up attempt may give rise to the inference that the defendant had actual knowledge of the hazard).

Zubic's testimony that the sidewalk was salted prior to the accident does not mandate the granting of summary judgment; rather, when viewed alongside of Plaintiff's contrary testimony as outlined above, it is clear that there is a genuine dispute regarding the issue. This is especially true in light of the fact that Zubic testified that, while the employees clear off the entryway "from time to time," there is no record of when or by whom the sidewalk was salted on December 6, 2010.

Finally, while it is true that Defendant was under no duty to continuously monitor and clear the sidewalk during the snow storm (see e.g. *Rising-Moore*, 453 F.3d at 817), it did have a duty to exercise reasonable care under the circumstances. If Plaintiff's version of events based on the evidence noted above is credited (i.e. that Defendant knew the ice existed but removed only the snow and did not salt or sand the sidewalk), one could conclude that Defendant breached that duty by being careless in its removal actions. Plaintiff testified that the sidewalk had

been recently cleared, yet enough time had passed for the area to be covered with a light dusting of snow when she arrived; significantly, Plaintiff also testified that she did not see any of Defendant's employees tending to the situation at that time. Again, the facts here are distinguishable from those in *Rising-Moore* because Plaintiff is not suggesting that the ice suddenly formed with very little warning and without Defendant's knowledge. Rather, she is arguing that the ice was already present under the snow and that Defendant knew it but failed to properly deal with it before she slipped and fell. Whether it was reasonable for Defendant to leave the allegedly icy sidewalk unattended to for the length of time required for a light dusting of snow to appear is a question best suited for the jury. See *Henderson*, 17 N.E.3d at 320 (highlighting the lack of evidence of industry standards regarding snow or ice removal and stating that "[w]hether there has been a breach of duty in a negligence action generally is a question of fact inappropriate for resolution by summary judgment, unless the facts are undisputed and only one inference can be drawn from those facts.").

Thus, giving Plaintiff the benefit of all reasonable inferences to which she is entitled, a jury could conclude that Defendant discovered[10] there was ice on the sidewalk at the time

---

[10] "[E]mployees' knowledge of a dangerous condition may be imputed to their employer." *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 279 (Ind. Ct. App. 2002) (citing *Southport Little League v. Vaughan*, 734 N.E.2d 261, 275 (Ind. Ct. App. 2000)).

it cleared off the snow, yet did not exercise reasonable care with regard to that hazard when it failed to sand or salt that same area upon discovery. As such, summary judgment must be denied.

CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment, filed by Defendant on January 5, 2015 (DE #54), is **DENIED**.

DATED: March 16, 2016                    /s/ Rudy Lozano, Judge
                                         United States District Court